BENTON, Judge,
concurring in part and dissenting in part.
I agree with the majority’s conclusion that the order adjudicating Carl E. Anderson an habitual offender is not void. However, I would hold that the trial judge erred in admitting the certificate of Anderson’s breath test analysis into the evidence. Accordingly, I would reverse Anderson’s DUI conviction.
The admissibility of a certificate of analysis in a prosecution for a violation of Code § 18.2-266 is controlled by Code § 18.2-268.9, which provides in relevant part as follows:
Any individual conducting a breath test under the provisions of [Code] § 18.2-268.2 shall issue a certificate which will indicate that ... the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate____ This certifi *33 cate, when attested by the individual conducting the breath test, shall be admissible —
Id. (emphasis added). A proper attestation by the individual who conducted the breath test is required before the certificate can be admitted under Code § 18.2-268.9 as an exception to the rule against hearsay. Cf. Gray v. Commonwealth, 220 Va. 943, 945, 265 S.E.2d 705, 706 (1980); Frere v. Commonwealth, 19 Va.App. 460, 465, 452 S.E.2d 682, 686 (1995) (“[I]n order to be admissible as an exception to the hearsay rule, a certificate introduced under [a similar statute] must bear the examiner’s signature as part of an attestation clause included on the certificate.”). Thus, the validity of the attestation affects not just the weight of the evidence, but its admissibility. Id.
Anderson was tested on August 16, 1995. Officer Carla VanLandingham, the individual who conducted the breathalyzer test and signed the certificate, testified that she had not tested the breathalyzer machine because she was “not allowed access to that.” The certificate, which was printed by the breathalyzer machine, stated that the machine “was tested for accuracy” on April 19, 1995. However, when Officer VanLandingham was asked on cross-examination, ‘You don’t have any personal knowledge that [the test was performed],” she answered, “I wasn’t there when it was done, that is correct.” Thus, the sole basis for Officer VanLandingham’s testimony that the machine had been tested within the last six months was the report given by the machine itself.
“The preparer’s signature on an attestation clause ... serve[s] the purpose of officially certifying the genuineness and accuracy of the certificate’s contents, a result that a mere signature cannot achieve.” Frere, 19 Va.App. at 465, 452 S.E.2d at 686. Indeed, the plain meaning of the word, “attest,” is “[t]o affirm to be correct.” The American Heritage Dictionary 140 (2d ed.1991). Officer VanLandingham’s testimony proved that she did not have personal knowledge that the machine had been tested other than her knowledge gained from the report given by the machine.
*34 When a witness A on the stand testifies, “B told me that event X occurred,” ... [h]e may be regarded as asserting the event upon his own credit, i.e., as a fact to be believed because he asserts that he knows it. But when it thus appears that his assertion is not based on personal observation of event X, his testimony to that event is rejected, because he is not qualified by proper sources of knowledge to speak to it. This involves a general principle of testimonial knowledge ....
5 John Henry Wigmore, Wigmore on Evidence § 1361 (James H. Chadbourn rev.1974).
When Officer VanLandingham testified that she made the attestation because the machine “told” her that it had been tested for accuracy, she revealed that her attestation was based merely upon the machine’s report and not her own personal observation. Thus, Officer VanLandingham was not competent to attest that the machine had been tested because she was “not qualified ... to speak to” the matter. Id. Simply put, her attestation was invalid.
Moreover, the machine’s report did not even state that the machine was found to be accurate.[3] Because Officer VanLandingham did not have independent personal knowledge *35 that the equipment had been tested and clearly had no basis to conclude that the machine had been found to be accurate, I would hold that the certificate was not properly attested as required by Code § 18.2-268.9. Thus, I would hold that the trial judge improperly admitted the certificate into the evidence.
The majority states that “[Anderson] argues that there was no foundation for the statements contained in the certificate, exactly the issue disposed of by Strowpe.” The majority misses the distinction between this case and Stroupe v. Commonwealth, 215 Va. 243, 207 S.E.2d 894 (1974). In Stroupe, the defendant “conced[ed] that the certificate contained every ... attestation specifically required by the statute” but “argue[d] that [the attestations] were simple conclusions and that the certificate was inadmissible until the Commonwealth had called the test operator to prove the foundation for the conclusions.” Id. at 244-45, 207 S.E.2d at 896 (emphasis added). No evidence or argument in Stroupe challenged the validity of the attestation. See id. Rather, Stroupe argued that, in addition to meeting the statutory attestation requirements, the Commonwealth also was required to prove by independent evidence a foundation for the conclusions contained in the certificate. See id. at 245, 207 S.E.2d at 896. The Supreme Court held that the General Assembly specifically intended to “spare the Commonwealth [that] ... burden[ ].” Id.
Anderson, however, disputes the validity of the attestation. The testimony of Officer VanLandingham showed that the attestation she made was not based upon her own knowledge. Anderson does not argue that the Commonwealth should be required, in every case, to prove by independent evidence the foundation for the statements in the certificate. Rather, Anderson argues that where, as here, the evidence proves that the attestation was not based upon the maker’s own knowledge and is thus “a mere signature,” Frere, 19 Va.App. at 465, 452 S.E.2d at 686, the attestation fails to meet the requirements of Code § 18.2-268.9 and the certificate is inadmissible. The difference between Anderson’s argument and Stroupe’s argument is substantive, not merely semantic.
*36 Finally, the majority asserts that requiring the individual who makes the attestation to obtain personal knowledge that the machine has been tested and found to be accurate within the past six months would conflict with the intent of the General Assembly. I disagree. “[T]he General Assembly intended to spare the Commonwealth the prosecutorial and financial burdens of calling two public officers to testify in every drunk driving case involving breathalyzer test evidence.” Stroupe, 215 Va. at 245, 207 S.E.2d at 896 (emphasis added). The General Assembly did not intend to spare the officer who conducts the test the burden of having personal knowledge that the machine was tested and found to be accurate within the last six months. I find no evidence that the General Assembly intended to dispense with the requirement that the maker of the attestation have personal knowledge that the facts to which the maker attests are true.
For these reasons, I dissent. I would reverse the conviction and remand for a new trial.

. No evidence proved that when the machine was tested for accuracy by the Division of Forensic Science on April 19, 1995 it was found accurate.
The certificate contains the following recitals:
DATE TEST CONDUCTED WED AUG. 16, 1995
WAS TESTED FOR ACCURACY BY THE DIVISION OF FORENSIC SCIENCE ON WED APR. 19, 1995
Officer VanLandingham’s attestation clause is the place that contains the boiler plate statement "that the equipment ... has been tested within the past six months and found to be accurate." However, that attestation was worthless because Officer VanLandingham testified that "[she] wasn't there when it was done.” She had no basis in fact to make that attestation. Furthermore, nothing in the boiler plate language of the attestation clause states that when the machine was tested on April 19, 1995, it was accurate.